JAMES KIRINCICH, Plaintiff and Third-Party Defendant, v. JIMI CONSTRUCTION COMPANY, Defendant-Appellant and Third-Party Plaintiff (Abbott Laboratories *et al.*, Defendants and Third-Party Defendants; Scottsdale Insurance Company *et al.*, Third-Party Defendants).

Second District   No. 2—93—0423

Opinion filed September 26, 1994.—Rehearing denied November 2, 1994.

52

Loretta M. Griffin, Elliot R. Schiff, and Ann F. Frolik, all of O'Connor, Schiff & Myers, of Chicago, for appellant.

Edward L. Cooper, of Kiesler & Berman, of Chicago, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

In this case third-party plaintiff, Jimi Construction Company (Jimi), a general contractor, brought an action against third-party defendant, Steel Components, Inc. (Steel), a subcontractor. Jimi sought contribution after it was sued by a worker for an injury which occurred on a construction site. The plaintiff also sued S.G. Krauss Company (Krauss), a structural steel subcontractor hired by Jimi. Krauss had engaged Steel to perform the structural steel work on the project. Krauss and Steel are Illinois corporations wholly owned by the same individual, Sam Krauss.

The trial court granted Steel's motion to dismiss Jimi's third-party complaint pursuant to section 2—619 of the Code of Civil Procedure. (735 ILCS 5/2—619 (West 1992).) After the trial of the original plaintiff's claim, Jimi made a motion to reconsider the dismissal of its complaint against Steel. The motion was denied by an order of the trial court, and this appeal is taken from that order.

The record on appeal reveals the following facts. In January 1989, Jimi contracted with Krauss for Krauss to do structural steel work on a construction project. Krauss, in turn, subcontracted the work to Steel. On March 13, 1989, James Kirincich, a construction worker employed by Steel, was injured in a fall while working on the project. He filed suit against Jimi as general contractor, Krauss as subcontractor, and against the owner of the property where the injury occurred. Scottsdale Insurance Company (Scottsdale) had

issued a general liability insurance policy to Krauss and Steel pursuant to an agreement between Jimi and Krauss, covering the construction project. Scottsdale, however, refused to defend or indemnify Jimi in the suit filed by the original plaintiff. Jimi filed a third-party action against Steel and Scottsdale, amongst others. In that action, Jimi sought contribution from Krauss and Steel and a declaratory judgment that it was an additional insured under the Scottsdale policy.

On November 16, 1992, the trial court conducted a trial only on the declaratory judgment action against Scottsdale. The court found that Krauss had named Jimi as an additional insured on the Scottsdale policy. Steel then moved for dismissal of Jimi's action under section 2—619, claiming that, as a matter of law, Jimi's status as an additional insured on the same policy as Steel prevented it from seeking contribution from Steel. A hearing on Steel's section 2—619 motion was held on November 30, 1992. There, the trial court ruled that Jimi's status as an additional insured on the Scottsdale policy issued to Krauss and Steel precluded Jimi from seeking contribution against Steel.

The original plaintiff's claim proceeded to trial in December 1992, resulting in a jury verdict against both Krauss and Jimi. After the verdict, a settlement was reached under which the plaintiff was to receive $550,000 made up of $275,000 each from Krauss and Jimi. Of Jimi's share, $225,000 was to be paid by Scottsdale under the policy and $50,000 was to be paid by Jimi's own insurer. Apparently seeking to recover this $50,000, Jimi made a motion for reconsideration of the dismissal of its third-party complaint against Steel. The motion was denied on March 8, 1993, and this appeal followed.

■ The trial court's decision to grant Steel's section 2—619 motion was based upon application of *Briseno v. Chicago Union Station Co.* (1990), 197 Ill. App. 3d 902, which held that where parties to a business transaction agree to provide insurance as part of the transaction, they are mutually exculpated, meaning that they agree to seek recovery from the insurance only and not from one another. (See also *Monical v. State Farm Insurance Co.* (1991), 211 Ill. App. 3d 215.) For purposes of this appeal, and in the trial court, the parties agreed that *Briseno* represents a correct statement of the law in this area. Despite the parties' agreement on this point, Jimi's brief discusses two cases which have reached a result which it believes to be inconsistent with *Briseno*. We find, however, that the cases discussed in Jimi's brief can be reconciled, as demonstrated by the Appellate Court's, Fourth District, opinion in *Monical*, which distinguished *Rome v. Commonwealth Edison Co.* (1980), 81 Ill. App.

3d 776, and *Dowling v. Otis Elevator Co.* (1989), 192 Ill. App. 3d 1064, from *Briseno* based on important factual differences. See *Monical*, 211 Ill. App. 3d at 219-25.

In the hearing on Steel's section 2—619 motion, the argument centered on whether Steel was a party to the agreement between Krauss and Jimi to provide insurance for the construction project. As far as we can tell from the record, the trial court did not make a factual finding on the issue of Steel's status, opting instead to rule that all subcontractors engaged by parties to the agreement were protected by *Briseno*'s rule of mutual exculpation. However, both the trial court and the parties have failed to appreciate a critical factual difference between *Briseno* and the present case. As a result, the trial court's understanding and application of *Briseno* was erroneous.

In *Briseno*, Chicago Union Station Company (Chicago Union) contracted with National Wrecking Company (NWC) for demolition work. Pursuant to the terms of the contract, NWC purchased insurance from Bituminous Casualty Company (Bituminous), naming itself and Chicago Union as insureds. An NWC employee brought a personal injury suit against Chicago Union, which was defended and fully indemnified by Bituminous pursuant to the policy. Through Bituminous, Chicago Union filed a third-party action for contribution against NWC. The appellate court in *Briseno* affirmed summary judgment for NWC on the basis that Chicago Union had no right to seek further recovery from NWC for a loss against which it had already been fully protected by NWC's purchase of insurance pursuant to their agreement.

The factual distinction between *Briseno* and the present case is that in the former, the entire liability of the party seeking contribution was covered and paid by the parties' joint insurer. (*Briseno*, 197 Ill. App. 3d at 906.) By contrast, in the present case, Scottsdale paid only $225,000 out of Jimi's $275,000 total liability to the plaintiff, leaving Jimi (through its own insurer) to suffer a $50,000 loss. The *Briseno* court pointed out that the party seeking contribution, Chicago Union, had been fully protected by the parties' joint insurance and had suffered no real loss. To allow contribution would have resulted in Chicago Union recovering twice for the same loss. (*Briseno*, 197 Ill. App. 3d at 906-07.) The fact that Chicago Union had been fully protected and indemnified by the joint policy with NWC was fundamental to the holding in *Briseno*. *Briseno*, 197 Ill. App. 3d at 907.

In the case at bar, the hearing on Steel's section 2—619 motion to dismiss was held prior to the trial of the original plaintiff's claim. Consequently, at the time the motion was argued, the extent

of each party's liability was not known. However, when the trial court denied Jimi's motion to reconsider, it was aware of the terms of the settlement, including the fact that $50,000 of Jimi's liability was not covered by the Scottsdale policy. Based upon *Briseno* and under the terms of that settlement, Jimi may seek contribution from Steel to the extent of its $50,000 loss. Each of the cases holding that contribution was barred by the rule of mutual exculpation found in *Briseno* arose in a factual context where the parties' joint insurance had absorbed the entire liability of the party seeking contribution. (*Briseno*, 197 Ill. App. 3d at 906-07; *Monical*, 211 Ill. App. 3d at 219; *Vandygriff v. Commonwealth Edison Co.* (1980), 87 Ill. App. 3d 374, 376.) Where the joint insurance policy has not fully protected one of the parties against liability, contribution should be allowed to the extent of the party's actual loss.

Finally, it is significant that in *Briseno* the third-party complaint was brought by Bituminous, the parties' joint insurer, rather than by one of the parties. The *Briseno* court recognized this fact and found the insurer's conduct in suing one of its own insureds to be reprehensible. (*Briseno*, 197 Ill. App. 3d at 906.) Here, unlike *Briseno*, there is no indication in the record that Scottsdale is bringing this third-party action on Jimi's behalf in an attempt to shift its loss to Steel. The effort by the joint insurer to shift liability onto one of its insureds clearly played a role in the *Briseno* court's decision to bar contribution. The absence of any duplicity on the part of the joint insurer lends further support to the argument that *Briseno* should not be applied here. Under these circumstances, we have no choice but to reverse the judgment of the trial court and remand this cause for further proceedings.

The judgment of the circuit court of Lake County is reversed, and this cause is remanded for further proceedings.

Reversed and remanded.

INGLIS, P.J., and QUETSCH, J., concur.